UNITED STATES of America

v.

**UNITED STATES CURRENCY IN the AMOUNT OF ONE HUNDRED FOR-TY-FIVE THOUSAND, ONE HUN-DRED THIRTY-NINE DOLLARS ($145,139) and One Hundred Fifty Dollars ($150) in Travelers Checks, More or Less, Defendants.**

No. CV 91–4949.

United States District Court,
E.D. New York.

Aug. 12, 1992.

Andrew Maloney, U.S. Atty. by Daniel F. DeVita, Brooklyn, N.Y., for the U.S.

Donald A. Harwood, James C. Neville, Harwood & Neville, New York City, for claimant.

### MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

Based on intimations in Supreme Court and Court of Appeals decisions, claimant moves to dismiss this civil forfeiture proceeding on the grounds of double jeopardy and excessive punishment. He has already been convicted and punished for failing to declare over $10,000 in cash he was taking from the country. The government now seeks to keep all the cash claimant was then carrying—some $145,000. The motion must be denied. The cash must be forfeited.

### I. FACTS

This action, begun on December 13, 1991, is to forfeit money under 31 U.S.C.

§ 5317(c). The currency was seized on March 3, 1990 from Joseph Efiong Etim, who was leaving the United States from John F. Kennedy Airport on a Nigerian Airways flight. He had failed to declare that he was carrying more than $10,000 in monetary instruments, as required by 31 U.S.C. § 5316.

Customs inspectors handed him a Customs Publications Form 503, which states that persons leaving the United States with more than $10,000 in monetary instruments must file a separate report with Customs. It warns travelers that failure to file that report may result in criminal and civil penalties and "may lead to forfeiture of the monetary instruments." Cust.Pub.Form 503. Customs officers discovered $145,139 in cash and $150 in travelers checks secreted in Etim's luggage in boxes of flour.

On April 2, 1990, Etim pleaded guilty to the offense of willfully failing to file a report while knowingly transporting currency outside the United States. He was sentenced by another judge of this court to five months' imprisonment, three years' supervised release, a $5,000 fine, and a $50 special assessment.

On December 13, 1991, the United States served a warrant for arrest of articles in rem and filed a complaint for forfeiture of the defendant currency. Etim filed a verified notice of claim on April 22, 1992.

Claimant Etim now moves to dismiss the forfeiture action under Rule 12 for failure to state a claim. In the alternative he moves under Rule E(9) of the Supplemental Rules for Admiralty and Maritime Claims (as adapted from former Rule 12) for an order releasing the res. His grounds are: forfeiture would violate the double jeopardy clause and the eighth amendment prohibition of cruel and unusual punishment and excessive fines; and the action was unreasonably delayed—presumably in violation of due process.

## II. LAW

Forfeiture of property is authorized by federal statute for a vast array of drug crimes, racketeering, wildlife, tax, pornography, currency, and other violations. The contraband itself, and frequently the vehicles and equipment used in the commission of the violation, are subject to forfeiture. *See generally, e.g.,* 16 U.S.C. § 670j (hunting, trapping, and fishing on public lands); 16 U.S.C. § 3374 (importation of fish and wildlife); 18 U.S.C. § 924 (traffic in weapons); 18 U.S.C. § 2252 (pornography); 18 U.S.C. § 2342 (contraband cigarettes); 18 U.S.C. § 2513 (electronic surveillance devices); 19 U.S.C. § 1527 (wild mammals and birds); 21 U.S.C. § 848 (racketeering); 21 U.S.C. 881 (narcotics); 25 U.S.C. § 264 (trading on Indian lands); 26 U.S.C. § 7301 *et seq.* (taxes); 31 U.S.C. § 5111 (counterfeit coins and currency); 50 U.S.C. § 192 (vessels in territorial waters in wartime).

Forfeiture provisions can be criminal or civil, or both criminal and civil in nature. The instant civil forfeiture action is predicated on the Currency and Foreign Transactions Reporting Act of 1970. 31 U.S.C. § 5317(c) provides that monetary instruments for which a report has not been filed pursuant to 31 U.S.C. § 5316 are subject to forfeiture.

In order to contest a forfeiture, a claimant must have standing, which consists of an ownership or a possessory interest in the property. *Mercado v. United States Customs Serv.,* 873 F.2d 641, 644 (2d Cir.1989). Claimant Etim, who had physical possession of the cash when it was seized and who filed a verified claim under oath, has standing.

### A. DOUBLE JEOPARDY

Where a civil proceeding which is not criminal in nature follows a criminal one, there is no double jeopardy. *See Murphy v. United States,* 272 U.S. 630, 632, 47 S.Ct. 218, 219, 71 L.Ed. 446 (1926) (acquittal on criminal nuisance charge does not preclude injunction to abate nuisance); *Berdick v. United States,* 612 F.2d 533, 537–38, 222 Ct.Cl. 94 (1979) (conviction may be followed by forfeiture and damage action); *United States v. United States Fishing Vessel Maylin,* 725 F.Supp. 1222, 1223 (S.D.Fla.1989) (forfeiture of $55,000 boat after prosecution for fish and game viola-

tions); *United States v. Kates*, 419 F.Supp. 846, 850–55 (E.D.Pa.1976) (forfeiture following criminal action). A civil forfeiture proceeding is not criminal in nature for double jeopardy purposes even though it may arise out of criminal conduct. *See One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 235–36, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972) (forfeiture proceeding is neither criminal nor a punishment).

■ Even where the criminal and the civil proceedings are related forfeiture actions, the former action does not preclude the latter. The government's failure to meet its burden beyond a reasonable doubt in the criminal case does not prevent it from sustaining the burden of a preponderance in the civil proceeding. For example, in *United States v. Dunn*, 802 F.2d 646 (2d Cir.1986), *cert. denied*, 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987), the defendant was convicted after a jury trial, but the jury found that only one of two sums was forfeitable in that criminal forfeiture trial. Subsequently, the government brought a civil forfeiture proceeding for the sum the criminal jury had refused to find forfeitable. The Second Circuit approved the sequence. *Id.* at 647–48. *But see United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 903 (2d Cir.1992) ("[W]e have some fears that the forfeiture statute is being used here as a substitute—or perhaps as a dry run—for a criminal prosecution.").

■ The Supreme Court wrote in *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), that a subsequent civil forfeiture action could violate the double jeopardy clause if it "was intended as punishment, so that the proceeding is essentially criminal in character." *Id.* at 362, 104 S.Ct. at 1105. To determine whether a penalty is civil or criminal in nature a court must ask whether Congress, in setting up the statutory scheme, "indicated either expressly or impliedly a preference for one label or the other." *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980).

■ Even where Congress has characterized the penalty as civil, a court must inquire whether the scheme is so punitive in either its purpose or effect that the expressed intention is negated. *See id.* In *89 Firearms*, the Court determined that Congress had classified the gun forfeiture provision as civil, and that appellant had not established that the sanction was so punitive as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *89 Firearms*, 465 U.S. at 366, 104 S.Ct. at 1107 (citation omitted).

■ The provisions of the Currency and Foreign Transactions Reporting Act are designed to allow the government to regulate and gather information on the flow of currency into and out of the United States. The provisions requiring passengers to declare that they are carrying more than $10,000 in cash assists the government in investigating regulatory violations as well as tax and other crimes. *See* S.Rep. No. 1139, 91st Cong., 2d Sess. 7 (1970); H.Rep. No. 975, 91st Cong., 2d Sess. 19–20, *reprinted at* 1970 U.S.Code Cong. & Admin.News 4394, 4404–05. The forfeiture provision is civil: whether the person has committed any criminal wrongdoing is irrelevant for purposes of the action to forfeit the funds. *United States v. $5393 in United States Currency*, 583 F.Supp. 1447, 1449 (E.D.N.Y.1984) (forfeiture proper even where claimant asserts that he is innocent of any crime).

■ Notwithstanding the civil nature of the currency reporting provision, claimant urges that the court consider it in the nature of a criminal penalty. As the defendant in the earlier criminal case, claimant served a five-month sentence and paid a $5,000 fine. Forfeiting some thirty times that amount in addition is an extremely harsh result. Since in the instant case the same sovereign has prosecuted both actions, a double jeopardy argument can plausibly be made.

There have been some suggestions by the Second Circuit that it might be receptive to the double jeopardy argument. In *United States v. 38 Whalers Cove Dr.*,

*Babylon, N.Y.*, 954 F.2d 29 (2d Cir.), *cert. denied sub nom.* —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992), the court addressed a convicted defendant's claim that a subsequent civil forfeiture would violate the double jeopardy clause. Claimant was convicted and sentenced in a state court for selling $250 worth of cocaine. He objected to the forfeiture of his $68,000 equity interest in the condominium where the drugs were sold, arguing that his situation presented an exception to the dual sovereign rule and that double jeopardy was implicated.

On the ground that the criminal proceeding was in state court but the forfeiture proceeding was federal, the *Whalers Cove* court found no double jeopardy violation. Nonetheless, the court suggested that a civil forfeiture could, in a different case, be found in the nature of a criminal penalty:

> Forfeitures that are overwhelmingly disproportionate to the value of the offense must be classified as punishment unless the forfeitures are shown to serve articulated, legitimate civil purposes.

954 F.2d at 35. The court relied on *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), where the Supreme Court found that a fixed civil penalty following a criminal sentence for filing false claims violated double jeopardy. Defendant Halper had taken $585 through Medicare fraud, and the Supreme Court held that a penalty of $130,000 was "so extreme ... as to constitute punishment." *Id.* at 442, 109 S.Ct. at 1898. Forfeitures "do not retain their civil character" if their purpose is deterrence or retribution, instead of compensation to the government for the harm caused. *Whalers Cove*, 954 F.2d at 36.

Under *Halper* and *Whalers Cove*, a forfeiture that is "overwhelmingly disproportionate" to the crime will be presumed to be punitive, with the burden then shifting to the government to show that the forfeiture is rationally designed to serve a legitimate civil purpose. *Halper*, 490 U.S. at 449–50, 109 S.Ct. at 1902; *Whalers Cove*, 954 F.2d at 34–35.

*Whalers Cove* represents an apparent shift in the view of judges of this circuit.

Earlier cases approved forfeitures in situations analogous to that in the instant case, without any mention of double jeopardy. In *United States v. United States Currency in the Amount of $23,481, More or Less*, 740 F.Supp. 950 (E.D.N.Y.1990), a passenger boarded a Nigerian Airlines flight at John F. Kennedy Airport without reporting that he was carrying more than $10,000 in monetary instruments, and $23,-481 was seized. He was arrested, subsequently pled guilty, and was sentenced and fined. The court granted summary judgment for the government and the money was forfeited. Similarly, in *United States v. $26,660 in United States Currency*, 777 F.2d 111 (2d Cir.1985), the Second Circuit affirmed the district court's grant of summary judgment forfeiting money seized at the border for failure to declare it to customs. The forfeiture was a later proceeding after the claimant had already been convicted of the customs violation. Neither court considered double jeopardy.

Forfeiture of funds for violations of the currency reporting requirements should not be characterized as a penalty triggering a double jeopardy holding after a criminal prosecution. The *Whalers Cove* court noted that one legitimate civil purpose of forfeiture statutes is to "remove instrumentalities of crime from general circulation...." 954 F.2d at 35. The rationale is the same one underpinning forfeitures generally: where money or property is used in the commission of a crime or to facilitate a crime, it is considered the culpable actor. *See, e.g., United States v. All Funds et al.*, 801 F.Supp. 984 (E.D.N.Y.1992).

In the instant case claimant unpersuasively attempts to distinguish currency violations from drug crimes, arguing that the funds should not be considered "tainted" in a customs case as they are in a drug case. He asserts that under *Halper* and *Whalers Cove*, the forfeiture serves no legitimate purpose and is improper.

The amount forfeited was in the nature of a deodand, lost to the government because it was the very instrument of the crime. "Deodand" derives from the Latin for "given to God," in that the dagger or

other weapon used to harm a King's subject was culpable and required religious absolution. *See generally Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–81, 94 S.Ct. 2080, 2090, 40 L.Ed.2d 452 (1974) (discussing pre-Biblical roots of practice of forfeiting harm-causing object to the Crown). The forfeited amount was used to provide Masses for the soul of the criminal actor or for charity; over time the practice became purely a revenue-raising measure. 1 W. Blackstone, *Commentaries.* In the United States forfeited funds are used only for the latter purpose.

 It is irrelevant that the money may not have its source in illegal activities. *United States v. McCaslin,* 959 F.2d 786, 788 (9th Cir.1992) (*"Halper* has no application to the very ancient practice by which instrumentalities of a crime may be declared forfeit to the government."); *Manufacturas Int'l, Ltda v. Manufacturers Hanover Trust Co. (Consolidated Bank Cases),* 792 F.Supp. 180, 184 (E.D.N.Y. 1992). Money forfeited for violation of the currency reporting statute becomes an instrumentality of crime at the moment the traveler fails to declare it.

Forfeiture for violations of the Currency and Foreign Transactions Reporting Act is supportable as a reasonable method of ensuring enforcement of currency declaration requirements. *Cf. United States v. Walker,* 940 F.2d 442, 444 (9th Cir.1991) (government has heavy financial burden in administering customs laws). Those requirements are, in turn, rational in light of the pervasive underground economy that avoids taxes. In addition to supporting inducements to pay taxes, the cash reporting requirements inhibit money-laundering and provide leads to criminal sources of cash. It cannot be said that the cash reporting-forfeiture statutes do not have well defined and sensibly effectuated ends.

## B. COLLATERAL ESTOPPEL

 Collateral estoppel in the civil proceeding based upon the prior conviction is appropriate. *See United States v. One 1975 Chevrolet K–5 Blazer, VIN No. CKY185F135794,* 495 F.Supp. 737, 741–43 (W.D.Mich.1980) (granting summary judgment for the government, forfeiting the automobile, based in part on collateral estoppel from prior criminal trial against defendant-claimant); *see also* Fed.R.Evid. 803(22).

Courts have allowed collateral estoppel in actions by the government for civil remedies based upon the same conduct that led to the criminal conviction. *See Local 167, Int'l Bhd. of Teamsters v. United States,* 291 U.S. 293, 298–99, 54 S.Ct. 396, 398, 78 L.Ed. 804 (1934) (conviction of conspiracy established existence of it for purposes of subsequent injunction action); *United States v. Fabric Garment Co.,* 366 F.2d 530, 533–34 (2d Cir.1966) (conviction for unlawfully selling government property estopped defendants on issue of knowledge); *United States v. Jacobson,* 467 F.Supp. 507, 508 (S.D.N.Y.1979) (collateral estoppel effect of criminal judgment in subsequent civil proceeding); *Securities & Exch. Comm'n v. Everest Mgmt Co.,* 466 F.Supp. 167, 173 & n. 6 (S.D.N.Y.1979) (collateral estoppel effect of general jury verdict).

A "conviction should not support issue preclusion if there was little incentive to defend vigorously, particularly if the prosecution was for a trivial offense." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4474, at 750 (1981). Here there was every reason to defend in the criminal case where serious penalties could be incurred.

Collateral estoppel where there has been a plea rather than a trial is more dangerous because of the possibility that the defendant may be innocent and is pleading to avoid a heavy prison term. *Plunkett v. Commissioner,* 465 F.2d 299, 305–07 (7th Cir.1972); *Thompson v. Galaxy Enters.,* 414 F.Supp. 198, 199 (S.D.N.Y.1976). The pleading defendant may not, in any realistic sense, have had a full and fair opportunity to litigate.

Nonetheless, courts have properly given collateral estoppel effect even to a conviction based on a guilty plea. *See, e.g., De Cavalcante v. Commissioner,* 620 F.2d 23, 26–27 & n. 9 (3d Cir.1980); *Ivers v. United States,* 581 F.2d 1362, 1366–67 (9th Cir.

1978); *United States v. Podell*, 572 F.2d 31, 35–36 (2d Cir.1978) (where plea entered after ten days of trial, collateral estoppel allowed); *United States v. Carlino*, 400 F.2d 56, 57 n. 1 (2d Cir.1968) (guilty plea may be used in subsequent civil tax proceedings even though issue preclusion rule had not yet been enacted at time of plea), *cert. denied*, 394 U.S. 1013, 89 S.Ct. 1630, 23 L.Ed.2d 39 (1969).

The full allocution under oath on a plea of guilty normally provides ample protection to defendants. *See* Fed.R.Crim.Proc. 11; *cf.* Fed.R.Evid. 803(22) (conviction admissible to prove any fact essential to the judgment). During the criminal proceedings defense counsel and the court would have explained the forfeiture implications of the plea.

In any event, in the instant case the subsequent forfeiture action was foreseeable at the time of the criminal action, since the government had already seized the funds. The likelihood of forfeiture is also printed on the customs form itself. The fact that this was a conviction after plea rather than trial does not warrant retrying the issues. There was a full and fair opportunity to litigate. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4474, at 752 (1981).

## C. EIGHTH AMENDMENT

Claimant's next argument in support of his motion to dismiss the complaint or release the res is that forfeiture would violate the eighth amendment prohibition of cruel and unusual punishment and of excessive fines. The claimant argues that $145,285, the amount which would be forfeited, is grossly disproportionate to a crime which warranted only a five-month sentence and a $5,000 fine. He also claims that forfeiture in this instance would constitute an excessive fine.

The Second Circuit has laid to rest the threshold question—whether the eighth amendment may be considered at all in a civil forfeiture proceeding—holding that it may. *See United States v. 38 Whalers Cove Dr., Babylon, N.Y.*, 954 F.2d 29, 36

(2d Cir.), *cert. denied sub nom.* —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992) ("for Eighth Amendment purposes, 'there is no substantial difference between an *in rem* proceeding and a[n *in personam* criminal] forfeiture proceeding brought directly against the owner'") (quoting *United States v. Huber*, 603 F.2d 387, 397 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)).

Earlier, the Second Circuit had changed position several times on the question whether an eighth amendment claim could be cognizable in the forfeiture context. In 1989, in *United States v. 4492 S. Livonia Rd., Livonia, N.Y.*, 889 F.2d 1258, 1270 (2d Cir.1989), the court wrote that at times "a forfeiture [may] cross the line of condemning an instrumentality of crime and move into the area of punishing a defendant by depriving him of his [property]." The next year, the court expressed doubt that the eighth amendment could apply at all to a forfeiture action. *See United States v. 141st Street Corp. by Hersh*, 911 F.2d 870, 889 (2d Cir.1990) (eighth amendment argument "entirely without merit"; citing other courts which rejected its application), *cert. denied*, —— U.S. ——, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991). In *141st Street*, the court found that forfeiture of an entire apartment building was neither cruel and unusual punishment nor an excessive fine since apartments on every floor of the building were being used for narcotics trafficking and there was drug use in the common areas of the building. 911 F.2d at 881.

After the 1992 *Whalers Cove* decision, it is fairly clear that at least some members of the Second Circuit have returned to a more sympathetic view of an eighth amendment claim in the civil forfeiture context. Nevertheless, as noted above, current law and the facts of the instant action present a strong case for forfeiture.

### 1. CRUEL AND UNUSUAL PUNISHMENT

In recent years, courts in the Second Circuit have suggested in dicta several times, most often in the RICO context, that forfeiture may constitute cruel and unusual punishment. *See, e.g., United States v. 38*

*Whalers Cove Dr., Babylon, N.Y.*, 954 F.2d 29 (2d Cir.), *cert. denied sub nom.* —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992); *United States v. 4492 S. Livonia Rd., Livonia, N.Y.*, 889 F.2d 1258 (2d Cir.1989); *United States v. Porcelli*, 865 F.2d 1352, 1364 (2d Cir.) (although statute provides that the entire RICO enterprise must be forfeited, eighth amendment "may limit the forfeiture where the enterprise is substantially engaged in legitimate business") (citation omitted), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *United States v. Walsh*, 700 F.2d 846, 857 (2d Cir.) (eighth amendment cruel and unusual punishment provision is the only Constitutional limit on complete forfeiture of assets under RICO statute), *cert. denied*, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *United States v. Huber*, 603 F.2d 387, 397 (2d Cir.1979) ("some doubt about its application"), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *United States v. Regan*, 726 F.Supp. 447, 458–59 (S.D.N.Y.1989) (refusing on the grounds of cruel and unusual punishment to order RICO forfeiture where predicate acts were tax violations), *aff'd in relevant part, vacated in part*, 937 F.2d 823 (2d Cir.), *amended*, 946 F.2d 188 (2d Cir.1991), *cert. denied sub nom. Zarzecki v. United States*, —— U.S. ——, 112 S.Ct. 2273, 119 L.Ed.2d 200 (1992). *But see United States v. Lizza Indus., Inc.*, 775 F.2d 492, 498–99 (2d Cir.1985) (eighth amendment not violated even where some of profits forfeited could have been made legally), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986).

The most recent expression of the Second Circuit's view of the eighth amendment in civil forfeiture cases is, as already noted, *Whalers Cove*. The court confronted both prongs of the eighth amendment argument, first addressing the merits of claimant's contention that the forfeiture was "grossly disproportionate" to the crime and violated the prohibition against cruel and unusual punishment. *Id.* at 39 (quoting *Solem v. Helm*, 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3009–10, 77 L.Ed.2d 637 (1983)). The panel considered the three relevant factors: (1) the seriousness of the offense; (2) punishments imposed for analogous crimes in the same jurisdiction; and (3) analogous punishments imposed in other jurisdictions.

The court's analysis and conclusion in *Whalers Cove* that the forfeiture was not disproportionate rested on the fact that the underlying crime was drug-related. In the analysis of all three factors, the court focused on the gravity of drug crimes and the punishments imposed for drug crimes in this and other jurisdictions. The court wrote that forfeiture will not be presumed punitive where the property is an instrumentality of crime—where the land or funds themselves may be considered culpable. 954 F.2d at 37.

The instant case involves a currency offense under 31 U.S.C., not a drug offense under 21 U.S.C. Since the government has not proven—nor is it required to do so under the currency reporting statute—that the funds derived from drugs or any other illegal conduct, claimant asserts that forfeiture is improper.

Carrying large amounts of cash does not itself connote wrongdoing. In these cases, the court takes judicial notice of the fact that it is often unclear who owns the money. The person criminally prosecuted is frequently but a carrier, often unknowingly, of someone else's cash in money-laundering operations. There are many reasons to amass cash instead of depositing money into banks. Historically immigrants to the United States were leery of banks, choosing instead to stow money under mattresses, in an ice box or other place of concealment.

Many reasons, some persuasive and some not, may animate someone who fails to declare currency when traveling abroad: tax avoidance; escape from punishment for criminal offenses which raised the money in the first place; fear that government officials in this country will steal the money—as they might if they were officials of the traveler's home country; fear of a holdup; fear that foreign customs officials will steal the money; fear of jealousy and familial demands at home if people learn of the money; or simply the habit of carrying objects and money from village to village in the home country, translated into carrying it from one country to another, for delivery to friends and relatives. Often the carrier

is doing a favor for compatriots in this country who are sending hard-earned, legally acquired cash to families in the home country. Forfeiture can have harsh effects under these benign circumstances.

Nonetheless, although currency crimes do not inflame the passions of the public as do drug crimes, they have harmful effects. The currency reporting statutes have a serious purpose. The Currency and Foreign Transactions Reporting Act of 1970 permits the United States to monitor the flow of currency into and out of the country, both for the purpose of determining trade balances and the cash available in this country and to detect and prevent other crimes. *See generally* S.Rep. No. 1139, 91st Cong., 2d Sess. 7 (1970); H.Rep. No. 975, 91st Cong., 2d Sess. 19–20, *reprinted at* 1970 U.S.Code Cong. & Admin.News 4404–05. Forfeiture is a rational response of the government to violation of currency regulations, and it is one of few effective tools to enforce such laws.

As noted in the double jeopardy discussion, the funds become an instrumentality of crime at the moment the traveler fails to declare them. The forfeiture is exactly proportionate to the extent of the violation since the amount of funds forfeited increases as the extent of the violation—the amount the passenger fails to declare—increases.

The second and third *Whalers Cove* factors also militate against finding that the forfeiture is grossly disproportionate to the crime in this case. Claimant focuses on the Sentencing Guidelines for the offense, which provide for a range of $100 to $5,000 for the fine. He argues that the Guidelines confirm that the crime is not a serious one. But it is the statute, and not the Guidelines, which provides the proper guide to determine seriousness. *Cf. United States v. Concepcion et al.,* 795 F.Supp. 1262 (E.D.N.Y.1992). Under federal law claimant could have been imprisoned up to five years and could have been subject to a fine of $250,000. *See* 31 U.S.C. § 5322. He served only five months in prison. He now faces forfeiture of an amount totaling only sixty percent of the fine he faced in the

criminal proceeding. This is not "grossly disproportionate." Forfeiture is not cruel and unusual punishment in this case.

## 2. EXCESSIVE FINES

■ The Second Circuit declined to address the issue of excessive fines in *Whalers Cove*. The court did, however, note that the Supreme Court has suggested that the excessive fines clause could be applicable to forfeitures. *See id.* at 39 (citing *Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 275, 109 S.Ct. 2909, 2920, 106 L.Ed.2d 219 (1989)). Acknowledging the severity of punishments for drug crimes, the *Whalers Cove* court wrote:

> We need not decide at exactly what point a fine or forfeiture might violate the Excessive Fines Clause, for wherever such a line could be drawn, this forfeiture would be proper.... [A] fine of many thousands of dollars for a minor drug offense is not beyond the pale.

*Whalers Cove,* 954 F.2d at 39. In the instant case defendant-claimant Etim's crime was not shown to have been drug-related, but he faces forfeiture of more than $145,000 of what is presumably his money for a crime which warranted only a five-month sentence and a $5,000 fine. For reasons already indicated, forfeiture should not be considered an excessive fine in violation of the eighth amendment. *Cf. Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 693, 94 S.Ct. 2080, 2096, 40 L.Ed.2d 452 (1974) (forfeiture of yacht worth almost $20,000 even though only one marijuana cigarette found on it). It is appropriate to increase the "fine" as the amount sought to be carried abroad without reporting increases.

## D. DELAY

■ Finally, claimant argues that the complaint must be dismissed since the government did not commence the forfeiture action within a reasonable amount of time. Presumably the argument is that forfeiture under such circumstances may violate due process. *Cf. United States v. All Assets of Statewide Auto Parts, Inc.,* 971 F.2d 896, 905 (2d Cir.1992) (court "enormously troubled" by the "disregard for due process that is buried in th[e forfeiture] statutes"); *United States v. All Funds et al.,* 801

F.Supp. 984, 989 (E.D.N.Y.1992) (forfeiture "skirts the edge of due process").

The Second Circuit in *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir.1986), enumerated the four factors necessary for considering whether a delay is reasonable: the length of delay, the reason for it, the claimant's assertion of his right to a prompt adjudication, and the degree of prejudice to the claimant. *See id.* at 1162–63; *see also United States v. $8,850 in United States Currency*, 461 U.S. 555, 564–65, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983) (four-part test of *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972), initially developed in speedy trial context, approved for forfeiture actions).

Claimant here argues that the government delayed more than nineteen months after the conclusion of the criminal proceedings before instituting this forfeiture action, and that he has been prejudiced because he has been without the use of the currency for that period of time. *See $8,850*, 461 U.S. at 565, 103 S.Ct. at 2012 ("Being deprived of ... [a] substantial sum of money for a year and a half is undoubtedly a significant burden."); *United States v. $23,407.69 in United States Currency*, 715 F.2d 162, 166 (5th Cir.1983) (delay in returning funds invalid under *Barker* test). Through counsel, claimant Etim wrote to the United States Customs Service in April 1990, indicating that he wished to recover the seized funds. The criminal proceedings against him were completed in May 1990, when sentence was imposed. Etim claims that the nineteen-month delay was unreasonable and violated due process.

A thirteen-month delay before the institution of a civil forfeiture proceeding in the Eastern District of New York has been held to be reasonable. *See Mercado v. United States Customs Serv.*, 873 F.2d 641, 646 (2d Cir.1989). The Supreme Court has found that eighteen months is not an unreasonable delay, given the time the government needs to institute and carry out the criminal proceeding. *See $8,850*, 461 U.S. at 568, 103 S.Ct. at 2014. Here, with a delay of nineteen months, one month more than the eighteen-month delay approved by the Supreme Court, claimant's argument of prejudice cannot stand. During much of the period his criminal prosecution and incarceration would have excused the delay.

## III. CONCLUSION

The civil forfeiture action does not raise an issue of double jeopardy or violate the eighth amendment. Claimant has not been prejudiced by any delay. The motion to dismiss and to release the res is denied. The government will submit an order granting summary judgment and forfeiture.

SO ORDERED.