UNITED STATES of America, Plaintiff,

v.

**$23,668 IN UNITED STATES CURRENCY and $106 in Canadian Currency, Defendants.**

No. 92–CV–567A.

United States District Court, W.D. New York.

April 28, 1994.

---

James P. Kennedy, Jr., Joseph James Karaszewski, U.S. Attys., Federal Centre, Buffalo, NY, for the U.S.

Kim Frank, pro se.

Carl Hillstrom, pro se.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case was referred to the undersigned by Hon. Richard J. Arcara to hear and report on dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(B). Claimants have moved, and the government has cross-moved, for summary judgment. For the following reasons, it is recommended that claimants' motion for summary judgment be denied and that the government's motion for summary judgment be granted.

### FACTS

On November 20, 1991, Carl Hillstrom and Kim Frank attempted to enter the United States from Canada at the Rainbow Bridge in Niagara Falls, New York. Hillstrom and Frank were passengers in a taxi cab. During a primary inspection at the customs booth, Carl Hillstrom produced a New Mexico driver's license and a United States passport which identified him as Thomas Minor. Kim Frank produced her new, unsigned passport. The customs inspector referred Hillstrom and Frank to the customs office for secondary inspection.

During secondary inspection, United States Customs Inspector Michael H. Bartel conducted a computer search based on the identification materials presented. The computer search on Thomas Minor was negative. Hillstrom (a/k/a Minor) filled out customs declaration form 6059B indicating that he

had $3,506.50 in U.S. currency and $14.00 in Canadian currency in his possession (Item 85, Ex. C).

The computer search on Kim Frank showed that she was wanted on an outstanding warrant and should be considered armed and dangerous (Frank Aff., Item 85, Exs. A, B). As a result of this information, Customs Inspector Patricia M. Janicki performed a "pat down" search for weapons on Frank. Janicki found no weapons, but discovered two packages concealed under Frank's bodysuit. The packages were removed and opened by customs officials. Each package contained $10,000.00 in U.S. currency. A search of Frank's bags revealed an additional $268.00 in U.S. currency and $90.10 in Canadian currency, as well as a passport issued to Carl Hillstrom bearing a photograph of the individual who identified himself as Thomas Minor.

A computer check on Carl Hillstrom revealed that he was wanted on an outstanding warrant for escape from a federal prison in Pennsylvania.

Customs officers seized $20,268.00 in U.S. currency and $106.00 in Canadian currency from Frank, and $3,500.00 in U.S. currency from Hillstrom,[1] pursuant to 31 U.S.C. §§ 5316 and 5317. Frank was arrested and charged with making a false statement to a U.S. customs official, in violation of 18 U.S.C. § 1001. Hillstrom was arrested and returned to a federal correctional facility to resume serving a 62 month sentence for a conviction in the Southern District of Florida on February 7, 1990.

On January 23, 1992, Kim Frank pled guilty to the false statement charge. On April 6, 1992, she was sentenced by Hon. Richard J. Arcara, United States District Judge, to three months probation and fined $250.00 (Item 32, Ex. D). At the plea allocution, the following colloquy took place:

THE COURT: Miss Frank, why don't you tell me in your own words what happened here.

THE DEFENDANT: I was coming from Canada to the United States, I had money hidden in my clothes, and when the

---

1. Of the $3,500.00 seized from Hillstrom, $100.00 was used to pay the taxicab fare.

customs agent asked me if I had any money, I said no, I didn't. And then they found the money.

THE COURT: Okay. You had $10,000 in one pocket?

THE DEFENDANT: Well, I had $10,000 in my pants and another $10,000 in my shirt.

THE COURT: Okay. And you had some—you told them you had no money whatsoever?

THE DEFENDANT: Right.

THE COURT: And they asked you whether you had any money or any currency on you?

THE DEFENDANT: Uh-huh.

THE COURT: And they asked you how much money you had with you or did they ask you whether you had $10,000?

THE DEFENDANT: No, they said—yeah, they said how much money do you have, and I said $300, or something like that.

\* \* \* \* \* \*

THE COURT: All right. Let's go to—let me ask you this, you understood what they were asking?

THE DEFENDANT: I understood what they were asking.

THE COURT: And you knew you were telling them—

THE DEFENDANT: A lie.

THE COURT: —a lie.

THE DEFENDANT: Yes.

(Item 32, Ex. E, pp. 19–20).

On August 24, 1992 the government commenced this action for forfeiture of $23,-668.00 in U.S. currency and $106.00 in Canadian currency by filing a verified complaint for forfeiture pursuant to 31 U.S.C. § 5317. On September 14, 1992, Kim Frank filed a claim for $20,268.00 U.S. currency and $106.00 Canadian currency (Item 6). On September 15, 1992, Carl Hillstrom filed a claim for $3,500.00 U.S. currency (Item 7).

On December 14, 1992 Carl Hillstrom filed a motion for summary judgment (Item 13). On January 22, 1993 the government responded to Hillstrom's motion and filed a cross-motion for summary judgment (Item 26).

After several pretrial conferences and orders addressing the claimants' various motions, the court issued an order dated March 15, 1993 (Item 33), which established a discovery schedule and set up a further telephone conference for May 17, 1993 to discuss briefing of the summary judgment motions. By subsequent orders, at the request of one or both of the claimants, the conference was adjourned no less than five times (Items 58, 65, 67, 69, 70). Finally, after a telephone conference on October 25, 1993, this court entered an order giving claimants until January 3, 1994 to respond to the government's summary judgment motion (Item 71). That date was subsequently adjourned for 30 days (Item 76), and again until April 1, 1994 (Item 78), at claimants' request. On April 7, 1994, claimants' joint response was filed with the court, and the matter was deemed submitted on the pleadings.

### DISCUSSION

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. Ann Taylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the

motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona,* 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. Ann Taylor, Inc., supra,* 933 F.2d at 167.

 ▬ Under the laws applicable to civil proceedings for the forfeiture of property seized by customs officers, the government bears the initial burden of establishing probable cause to believe that the property is subject to forfeiture. *United States v. $94,-000.00 in U.S. Currency,* 2 F.3d 778, 782 (7th Cir.1993); *United States v. Property at 4492 S. Livonia Rd., Livonia,* 889 F.2d 1258, 1267 (2d Cir.1989). "Probable cause" in the forfeiture context is defined as "reasonable ground for the belief of guilt supported by less than *prima facie* proof but more than mere suspicion." *United States v. $364,960.00 in U.S. Currency,* 661 F.2d 319, 322–23 (5th Cir. 1981); *see also United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 (2d Cir. 1986). After the government demonstrates probable cause for forfeiture, the burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture. 19 U.S.C. § 1615; *United States v. Banco Cafetero Panama, supra.*

The statutory provisions relied upon by the government for forfeiture of the currency seized from the claimants are set forth at 31 U.S.C. §§ 5316 and 5317. Specifically, Section 5316 provides in relevant part as follows:

(a) ... a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly—

(1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time—

(B) to a place in the United States from or through a place outside the United States;

\* \* \* \* \* \*

(b) A report under this section shall be filed at the time and place the Secretary of the Treasury prescribes. The report shall contain the following information to the extent the Secretary prescribes:

(1) the legal capacity in which the person filing the report is acting.

(2) the origin, destination, and route of the monetary instruments.

(3) when the monetary instruments are not legally and beneficially owned by the person transporting the instruments, or if the person transporting the instruments personally is not going to use them, the identity of the person that gave the instruments to the person transporting them, the identity of the person who is to receive them, or both.

(4) the amount and kind of monetary instruments transported.

(5) additional information.

\* \* \* \* \* \*

(d) **Cumulation of closely related events.** The Secretary of the Treasury may prescribe regulations under this section defining the term "at one time" for purposes of subsection (a). Such regulations may permit the cumulation of closely related events in order that such events may collectively be considered to occur at one time for the purposes of subsection (a).

Section 5317 provides, in relevant part:

(b) **Searches at border.** For purposes of ensuring compliance with the requirements of section 5316, a customs officer may stop and search, at the border and without a search warrant, any vehicle, vessel, aircraft, or other conveyance, any envelope or other container, and any person entering or departing from the United States.

(c) If a report required under section 5316 with respect to any monetary instru-

ment is not filed (or if filed, contains a material omission or misstatement of fact), the instrument and any interest in property, including a deposit in a financial institution, traceable to such instrument may be seized and forfeited to the United States Government. . . .

The Secretary of the Treasury's regulations further define the currency reporting requirements as follows:

Each person who physically transports, mails, or ships, or causes to be physically transported, mailed, or shipped, or attempts to physically transport, mail or ship, or attempts to cause to be physically transported, mailed or shipped, currency or other monetary instruments in an aggregate amount exceeding $10,000 at one time . . . into the United States from any place outside the United States, shall make a report thereof. A person is deemed to have caused such transportation, mailing or shipping when he aids, abets, counsels, commands, procures, or requests it to be done by a financial institution or any other person.

31 C.F.R. § 103.23(a) (1993).

■ I find that the government has met its initial burden of establishing reasonable grounds for forfeiture under these statutory and regulatory requirements. Secondary inspection revealed an outstanding warrant for Kim Frank's arrest, and indicated that she should be considered armed and dangerous. Based on this information, customs officials had sufficient justification to conduct a pat-down search for weapons under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Upon discovering $20,000.00 concealed on Frank's person, the officers had reasonable cause to believe that she had violated the currency reporting requirements, since she had answered "no" or "none" to their inquiries about whether she was transporting any money into the United States. They also had justification to conduct a further search of Frank's bags under 31 U.S.C. § 5317(b). Upon discovering Hillstrom's passport in Frank's bag, and after a computer check revealed Hillstrom's identity and criminal status, the officers had probable cause to arrest Hillstrom for escape from a federal prison.

■ Additionally, the government has submitted the affidavit of Customs Special Agent Leonard S. Vadala, which states that Hillstrom told customs agents that the $20,000.00 found during the search of Frank was actually his, and that he had instructed Frank to carry it on her person. Based on this information, which is admissible for the purpose of showing probable cause in the context of a forfeiture proceeding, *see U.S. v. Property at 4492 S. Livonia Rd., supra,* 889 F.2d at 1267, the government had reasonable ground to believe that Hillstrom had violated or had caused a violation of the currency reporting requirements.

■ The claimants contend that the information contained in Agent Vadala's affidavit is false. According to Carl Hillstrom, no such interview took place and no such statements were made. However, these assertions have not been supported by any evidence tending to show why Agent Vadala's sworn statements, made on personal knowledge in the regular course of his duties, should not be given appropriate weight in this forfeiture action. The question of probable cause for forfeiture does not depend on the ultimate admissibility of the evidence offered by the government but only upon its legal sufficiency and reliability. *United States v. One 56–Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1283 (9th Cir.1983).

Based on this evidence, the government has met its burden of demonstrating probable cause to believe that the currency seized from both Hillstrom and Frank is forfeitable under 31 U.S.C. § 5316(c). The burden now shifts to the claimants to establish a defense to forfeiture.

Carl Hillstrom claims that his $3,500.00 is not forfeitable because it was not subject to the reporting requirements. Hillstrom points out that he reported all the currency seized from him, even though he was not required by law to do so. He also points out that he was not charged with any violations of the reporting statutes, nor could he have been, because he was not carrying more than $10,000.00.

These arguments are unavailing. Forfeiture of the currency seized from Hillstrom is not precluded by the government's failure to charge him with a violation of the currency reporting requirements. As discussed above, all that the government is required to show in this forfeiture action is probable cause to believe that the claimant failed to comply with the reporting requirements. The government does not have to prove, as it would at trial, that the claimant actually committed a chargeable offense. *United States v. $400,000.00 in U.S. Currency,* 831 F.2d 84, 88 (5th Cir.1987). Forfeiture is a civil proceeding. Whether the claimant has committed any criminal wrongdoing is irrelevant for the purposes of the action to forfeit the seized currency. *United States v. U.S. Currency in the Amount of $145,139.00,* 803 F.Supp. 592, 595 (E.D.N.Y.1992), *aff'd,* 18 F.3d 73 (2d Cir.1994).

Furthermore, the facts developed by the customs agents support the inference that the entire amount of money should be treated as one transaction. The claimants were traveling together. Hillstrom presented a false passport, and Frank had Hillstrom's true passport in her possession. Hillstrom told Agent Vadala that the money Frank was carrying was his, and that he instructed her to conceal it on her person. Clearly, the claimants acting in concert were attempting to conceal both Hillstrom's identity and the cash from the border agents.

The claimants also contend that they had no notice or knowledge of the currency reporting requirements. However, in order to establish probable cause for forfeiture, the government does not need to show that the claimants willfully violated or even knew about the reporting requirements. *U.S. v. $94,000.00, supra,* 2 F.3d at 784–85; *United States v. $359,500 in U.S. Currency,* 828 F.2d 930, 933–34 (2d Cir.1987). The government need only show that it has probable cause to believe that the claimants entered the country knowing that they were transporting, or causing to be transported, more than $10,000.00 and that the claimants did not report this fact to customs officials. *U.S. v. $94,000.00, supra,* 2 F.3d at 785.

Furthermore, Kim Frank's conviction under 18 U.S.C. § 1001 for making a false statement to a customs official, along with the transcript of her plea allocution, conclusively establishes her lack of a defense to the forfeiture of the $20,268.00 U.S. currency and $106.00 Canadian currency found in her possession. *See United States v. $26,660 in U.S. Currency,* 777 F.2d 111, 112–113 (2d Cir.1985); *Ivers v. $40,998.86,* 581 F.2d 1362, 1367 (9th Cir.1978).

I have considered the claimants' contentions that their search and seizure at the border was unauthorized or unconstitutional, and find those contentions to be without merit. As discussed above, the search of Kim Frank and the seizure of the currency was authorized by 31 U.S.C. § 5317(b). Furthermore, border searches of luggage, personal belongings or outer clothing may be conducted without a search warrant and without regard to considerations of probable cause. *United States v. Grotke,* 702 F.2d 49, 51 (2d Cir.1983). Upon conducting these authorized procedures, the officers obtained evidence sufficient to formulate reasonable suspicion to believe that the currency reporting requirements had been violated and that the claimants had provided false or misleading information to customs officials, justifying the more intrusive search of Kim Frank's clothing. Finally, the government's responses to interrogatories on file sufficiently establish that the claimants were advised of their *Miranda* rights once the customs officials had obtained probable cause to arrest (*see* Item 48, Ex. B).

Once the government has demonstrated probable cause for forfeiture, and in the absence of any showing by the claimants that the currency is not subject to forfeiture, summary judgment in favor of the government is appropriate. *U.S. v. Property at 4492 S. Livonia Rd., supra,* 889 F.2d at 1267; *U.S. v. Yacht Named Tahuna, supra,* 702 F.2d at 1287.

## CONCLUSION

For the reasons set forth above, it is recommended that the claimants' summary judgment motion (Item 13) be denied, and

that the government's summary judgment motion (Item 26) be granted.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the government and the defendant.

**SO ORDERED.**